UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL THOMPSON,

                Plaintiff,                         Case No. 1:12-cv-1066

v.                                                Honorable Robert J. Jonker

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and for failure to state a claim.

**Factual Allegations**

Plaintiff Michael Thompson presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF). The actions he complains of, however, occurred while he was housed at the Richard A. Handlon Correctional Facility (MTU). He sues the MDOC and its Director Daniel L. Heyns and Grievance Specialist Kent C. Crust. He also sues MTU Warden John Prelesnik, and Deputy Warden Barb Meagher and Assistant Deputy Warden Gary Ball.

According to the complaint and attachments, Plaintiff served as a member of the MTU warden's forum until December 19, 2011, when Defendants Ball and Meagher conspired to remove him from his position, ostensibly in violation of MDOC Policy Directive 04.01.150, ¶ I. Plaintiff contends that the termination of his position deprived him of his right to due process under the Fourteenth Amendment.

Plaintiff filed a Step I grievance on January 2, 2012, in which he alleged that, by removing him from the warden's forum, Ball and Meagher had violated his right to due process and had retaliated against him for unspecified protected conduct. His grievance was denied at Step I on January 24, 2012, by Assistant Deputy Warden E. Lake and Grievance Coordinator C. Heffelbower, neither of whom is named as a Defendant in this action. In the Step I grievance response, Plaintiff was informed that he had been terminated from the Warden's Forum because of his "inability to follow the purpose of the Warden's Forum." (*See* Ex. C to Compl., docket #1-1, Page ID#20.) Plaintiff appealed his grievance to Step II, and Defendant Prelesnik denied the grievance on March 6, 2012. Plaintiff's Step III grievance was denied by Defendant Crust on June 14, 2012.

In the interim, on January 24, 2012, Plaintiff was transferred to URF. Since being transferred to URF, Plaintiff has been unable to obtain a prison job paying the same pay rate he received at MTU. Plaintiff believes that Defendants transferred him in retaliation for his having filed a grievance against Defendants Meagher and Ball, in violation of both the First Amendment of the United States Constitution and the Michigan constitution.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## Discussion

I. Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendants Prelesnik, Crust or Heyns, other than his claim that they failed to adequately supervise their subordinates and failed to properly resolve his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

has failed to allege that Defendants Prelesnik, Crust and Heyns engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Due Process

Plaintiff contends that he was removed from his position on the warden's forum without due process of law. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Here, Plaintiff clearly has failed even to argue that his removal from the warden's forum imposes an atypical and significant hardship. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Moreover, the courts routinely have held that prisoners do not have a protected interest in participating in any particular prison program. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"). The Sixth Circuit expressly has rejected the proposition that a prisoner has a protected liberty or property interest in being an inmate representative on the warden's forum. *See VanDiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002). As a consequence, Plaintiff fails to state a due process claim.

### C. Retaliation

Plaintiff alleges that Defendants Meagher and Bell retaliated against him for unspecified protected conduct by removing him from the warden's forum. He also alleges that Defendants collectively retaliated against him for filing a grievance against Defendants Meagher and Bell on January 2, 2012 by transferring him from MTU to URF on January 24, 2012. He alleges that the transfer resulted in his being placed in a lower paying job at URF.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim that Meagher and Ball retaliated against him by removing him from the warden's forum fails at the first step. Plaintiff's complaint is devoid of allegations describing the protected conduct in which he allegedly was engaged at the time he was removed from the warden's forum. The only information about the basis for Plaintiff's removal from the warden's forum comes from the response to his Step I grievance, which is attached to his complaint. According to the grievance response, Plaintiff was removed from the warden's forum for the following reason:

> Per 04.01.150 "Prisoner Housing unit Representatives/Wardens"
>
> The Warden also may remove a prisoner who engages in conduct which otherwise jeopardizes the custody, security or good order of the facility. Mr. Thompson Plaintiff was removed for cause and the inability to follow the purpose of the Warden's Forum. Mr. Thompson was advise[d] that he may run in the next election ([i]n April 2012).

(Ex. C to Compl., Page ID#20.) In other words, Plaintiff was removed for failure to comply with a prison regulation. Conduct that violates a legitimate prison regulation is not protected. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). Because Plaintiff alleges no contrary fact and does not describe the substance of his alleged protected conduct, he fails to state a retaliation claim based on his removal from the warden's forum.

With respect to his allegation that Defendants collectively retaliated against him for filing a grievance, Plaintiff satisfies the first requirement of a retaliation claim. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Plaintiff, however, cannot show that his transfer to URF was an adverse action. "[S]ince prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005): *see also Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks

omitted). The Sixth Circuit has recognized only limited circumstances under which a transfer is sufficiently adverse to support a retaliation claim. For example, transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action. *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010); *see also Thaddeus-X*, 175 F.3d at 398 (holding that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse). Similarly, if a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts would such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007).

In the instant case, Plaintiff does not allege that he was transferred to segregation or a lock-down unit. Indeed, he does not even allege that he was transferred to a prison at a different security level. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff's allegation that he has not yet been able to obtain as desirable a job at URF as he held at MTU falls far short of an allegation that his transfer was intended to and did interfere with his access to the courts. *See Siggers-El*, 412 F.3d at 702.

Moreover, Plaintiff fails to demonstrate a causal connection between the filing of his grievance on January 2, 2012 and his transfer more than three weeks later. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-*

*Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") While in limited circumstances temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants Meagher and Ball had anything to do with his transfer or that they or any other Defendants retaliated against him because he filed a grievance against them some three weeks earlier. Accordingly, Plaintiff's speculative allegation of retaliatory motive is wholly inadequate.

For both reasons, Plaintiff's allegations fail to state a retaliation claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity and for failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     December 7, 2012           /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE